UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEFFREY W. G.,[1]<br><br>　　　　　Plaintiff,<br><br>v.<br><br>MARTIN J. O'MALLEY,<br>Commissioner of Social Security<br>Administration,[2]<br><br>　　　　　Defendant. | Case No. 1:23-cv-00017-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff filed a Complaint with the Court seeking judicial review of the Commissioner's denial of his application for a period of disability and disability insurance benefits. (Dkt. 1.) The matter is fully briefed and at issue. (Dkt. 10, 12, 13.) Having carefully reviewed the parties' memoranda and the entire administrative record ("AR"), the Court will remand the decision of the Commissioner for the reasons set forth below.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Martin J. O'Malley was sworn in as the Commissioner of Social Security Administration on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley will be substituted as the Respondent in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**BACKGROUND**

On January 26, 2020, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, claiming disability beginning January 9, 2020. (AR 13.) At the time of the alleged disability onset date, Plaintiff was 59 years of age. (AR 26.)

The application was denied initially and on reconsideration, and a hearing was conducted by telephone on November 17, 2021, before Administrative Law Judge (ALJ) Stephen Marchioro. (AR 70.) After considering testimony from Plaintiff and vocational expert (VE) Connie Hill, the ALJ issued a decision on December 22, 2021, finding Plaintiff had not been under a disability from January 9, 2020, through the date of the decision. (AR 27.)

Plaintiff timely requested review by the Appeals Council, which denied his request for review on November 14, 2022. (AR 1-6.) He next timely appealed this final decision to the Court on January 12, 2023. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have the power to enter…a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The Court must uphold the ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id.*

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id.*

## THE ALJ'S ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step[3]

sequential inquiry to determine whether a claimant is disabled within the meaning of the

Act. 20 C.F.R. §§ 404.1520, 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th

Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ determined that Plaintiff had not engaged in substantial

gainful activity since January 9, 2020. (AR 15.) At step two, the ALJ found Plaintiff had

the following medically determinable, severe impairments: "a major depressive disorder;

anxiety/social phobia; and post-traumatic stress disorder (PTSD)." (AR 16.)

At step three, the ALJ determined that Plaintiff did not have an impairment or

combination of impairments which met or were medically equal to Listings 14.04

(Depressive, bipolar and related disorders), 12.06 Anxiety and obsessive-compulsive

disorders), and 12.15 (Trauma- and stressor-related disorders). (AR 18 – 19.)

At step four, the ALJ concluded Plaintiff retained the residual functional capacity

(RFC) to perform a full range of work at all exertional levels, but with the following

nonexertional limitations:

> [T]he claimant is limited to simple, routine tasks. He can only
> occasionally interact with the public and co-workers. He can
> tolerate only occasional changes in the work setting.

---

[3] *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013), sets forth the five-step review process as
follows: "The five-step process for disability determinations begins, at the first and second steps, by
asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the
claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second
step, the third step asks whether the claimant's impairment or combination of impairments meets or
equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* §
416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry.
*See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's
'residual functional capacity' in determining whether the claimant can still do past relevant work or make
an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v)."

**MEMORANDUM DECISION AND ORDER  - 4**

(AR 19.)

The ALJ found that, because of Plaintiff's nonexertional limitations, his ability to perform work at all exertional levels was compromised. (AR 26.) Relying upon testimony from the vocational expert, the ALJ determined at step five that jobs exist in significant numbers in the national economy that Plaintiff could perform given his age, education, work experience, and RFC, such as: Industrial sweeper/cleaner; Laundry laborer; and Cleaner II. (AR 26.) The ALJ therefore concluded that Plaintiff had not been under a disability from January 9, 2020, through the date of the decision. (AR 27.)

## PLAINTIFF'S TESTIMONY

At the hearing, Plaintiff provided testimony that he had vocational training in heating, ventilating, air conditioning, and refrigeration. (AR 78.) He had worked for the same technology company for 27 years. (AR 79.) Plaintiff testified that, during those 27 years, he was on the compliance-based rescue team, the hazmat team, the ERT team, the medical-emergency team, and the bomb-threat team. (AR 93.) His work involved dealing with employee injuries, explosions, winter storm emergencies, and plane crashes. (AR 94.) He volunteered for a layoff and took early retirement from his last position with the technology company, because he was "burnt out." (AR 83.) Following this retirement, he began to do HVAC work for a hospital. (AR 83.) After the HVAC position, he worked for nine months as a school bus driver. (AR 83 – 84.)

At the time of the hearing, Plaintiff was working part time four days each week, for 3 – 4 hours each day, at a distribution warehouse taking packages off a conveyor,

putting them onto a pallet, and moving the pallets into a truck. (AR 79 – 80.) Plaintiff

testified that the job was "pretty busy," with up to 40 people working around him at a

time. (AR 81.)

Plaintiff testified that he was not capable of full-time work because he could not

persist throughout an entire workday without interruption from psychological symptoms.

(AR 85 – 86.) He testified that he becomes nervous and feels like he has "to find a quiet

corner somewhere and bawl." (AR 86.) Nonetheless, he confirmed he was able to work

up to four hours each day at the distribution warehouse. (AR 86.) He testified that he has

little patience with co-workers at the distribution warehouse, because when they do not

do their job, it affects his job. (AR 90 – 91.) He does not socialize with any of his co-

workers. (AR 91.)

Although he testified he had some physical impairments, Plaintiff confirmed that

his mental health is the primary reason he is unable to work full time. (AR 86.)

Physically, he testified that he has "something wrong with [his] left shoulder, and…tennis

elbow in [his] left elbow." (AR 87.) He received cortisone injections in the past, which

helped. He treated his pain with ibuprofen and wore a brace around his forearm. (AR 91.)

Plaintiff also testified that he has disturbing dreams which wake him, and that he takes

frequent naps during the day. (AR 92.)

As for mental health treatment, Plaintiff testified he was being treated by P.A. Bill

Short, who had been treating him for the past four or five years without charge because

Plaintiff did not have health insurance. (AR 87.) He testified he was unable to see P.A.

Short in person for the year preceding the November 2021 hearing, because of the

**MEMORANDUM DECISION AND ORDER  - 6**

COVID-19 pandemic. Instead, he called P.A. Short about every three months for medication refills and to talk over the phone. (AR 87.) At the time of the hearing, Plaintiff was not seeing any other mental health professional due to lack of insurance, although he had done so in the past. (AR 88.) He testified that the therapists he saw previously did not help. (AR 95.)

## DISCUSSION

Plaintiff raises the following issues on appeal:

1.  Whether the ALJ erred in his evaluation of Plaintiff's subjective symptom testimony.

2.  Whether the ALJ erred in his evaluation of the medical opinions.

3.  Whether the ALJ erred because he failed to develop the record by ordering a consultative examination for physical impairments.

4.  Whether the ALJ erred in his evaluation of the third-party statements of Plaintiff's spouse, family members, and friends.

No other issues are raised by Plaintiff on appeal.

## 1.     Subjective Symptom Testimony

### A.     *Legal Standard*

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." Social Security Ruling (SSR) 16-3p, *available at* 2017 WL 5180304, at *6 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine

MEMORANDUM DECISION AND ORDER  - 7

whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). *See also Smartt v. Kijakazi*, 53, F.4th 489, 494 (9th Cir. 2022) (articulating the clear and convincing standard); *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (setting forth the two-part test). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46). An ALJ must identify the testimony that is found not credible and link that testimony to the particular parts of the record supporting the non-credibility determination. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Failure to do so is legal error. *Id*.

**MEMORANDUM DECISION AND ORDER  - 8**

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1197 (9th Cir. 2004).

MEMORANDUM DECISION AND ORDER - 9

The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### B.    *Analysis*

Plaintiff testified that he was unable to work full-time because of interruptions from, and an inability to persist due to, his psychological impairments. (AR 20.) The ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 21.) The ALJ next proceeded to summarize the medical records pertinent to Plaintiff's psychiatric care between September of 2018 and December of 2021. (AR 21 – 22.) At the end of this summary, the ALJ concluded that the medical evidence demonstrated Plaintiff's psychiatric symptoms were under good control with medication therapy; reflected benign mental status examinations, large gaps in treatment, inconsistent care from a counselor or therapist, and lack of acute exacerbation of psychiatric symptoms; and Plaintiff had successfully returned to work part-time. (AR 22 – 23.)

### (1)    *Insufficient Explanation*

Plaintiff first argues that the ALJ failed to identify and link the testimony that the ALJ found inconsistent with the record to any particular portions of the record supporting his determination, constituting legal error. The Court agrees that the ALJ was

insufficiently specific in his explanation for discounting Plaintiff's subjective symptom testimony.

A reviewing court should "not fault the agency merely for explaining its decision with 'less than ideal clarity,'" however, "we still demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d 1090, 1099 (9th Cir. 2014)). Here, the ALJ did not specify "which…testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. He did not explain what portions of the medical record conflicted with which portions of Plaintiff's subjective symptom testimony about Plaintiff's psychological symptoms, and his inability to persist throughout an eight-hour workday. The ALJ recounted the medical record evidence, but he did not use that evidence to meaningfully evaluate Plaintiff's subjective symptom testimony about his psychological symptoms or link the medical evidence to any specific testimony. This was legal error. *See Brown-Hunter*, 806 F.3d at 489 (general rejection of claimant's testimony was an insufficient basis for an adverse credibility determination); *Treichler*, 775 F.3d at 1102-03 (finding error when the ALJ did not specifically identify the testimony he found not credible); *Ammie B. v. Saul*, 2020 WL 1984894, at *8 (D. Or. Apr. 27, 2020) (summarizing the medical record but failing to link it to any specific testimony is legal error). This error, alone, is reason enough to remand this case. *Benjamin M. v. Kijakazi*, No. 6:20-cv-1058-SI, 2021 WL 4709723, at *4 (D. Or. Oct. 8, 2021).

**MEMORANDUM DECISION AND ORDER  - 11**

Further, a closer look at the medical records, when read in context, do not appear to provide a sufficient basis to discredit Plaintiff's account of his psychological symptoms. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (finding the ALJ selectively quoted from treatment records). In concluding otherwise, the ALJ selectively chose certain portions of the treatment notes.

For instance, the ALJ cited portions of treatment notes that reflected Plaintiff reported doing well so long as he took his medications; that his depression and anxiety were manageable; notations of generally unremarkable mental status examinations; the absence of any acute exacerbations of his psychiatric symptoms; stability on his medication regimen; and that Plaintiff was tolerating his medications well. (AR 21 – 22.) But these observations ignore significant portions of the treatment notes, which reflect that Plaintiff reported considerable limitations due to his psychological symptoms.

Several treatment notes which follow the alleged onset date of January 9, 2020, contain statements that corroborate Plaintiff's hearing testimony. On January 30, 2020, Plaintiff reported that he had lost three jobs in the last twelve months, and that his anxiety was overwhelming. (AR 469, 21.) He reported being terminated from his position at a school lunch warehouse due to inattention related to anxiety and panic, causing an injury to his arm. (AR 469.) He also described worsening depressive symptoms and anxiety that made it difficult to complete daily tasks, as well as passive suicidal ideation. (AR 469, 471.) On September 18, 2020, Plaintiff reported to consultative examiner Alison Radcliffe, Ph.D., that medications mainly helped to "take the edge off his distress," but had not resulted in significant improvement. (AR 485.)

**MEMORANDUM DECISION AND ORDER  - 12**

Later treatment notes from Plaintiff's mental health care provider reflect worsening symptoms. Plaintiff reported to P.A. Short on February 23, 2021, that his medications were not helping. (AR 600.) Plaintiff stated he struggled with frequent bouts of anxiety, suicidal ideation, difficulty falling asleep, lack of motivation in facing the day, and forgetting to take his medications. (AR 600.) Plaintiff's reported symptoms appeared to have worsened since a visit with P.A. Short on January 12, 2021, where he reported "feeling a little better. Kind of even." (AR 596.)

When he returned for psychiatric care to P.A. Short on November 30, 2021, Plaintiff reported "doing OK," but that he continued to struggle with depressive symptoms and frequent bouts of anxiety. (AR 22, 604.) He reported experiencing episodes of passive suicidal ideation. (AR 604.) Although he was working part-time for a distribution warehouse, he recounted that he had difficulty going to work, interacting with others, and completing tasks. (AR 604.) Plaintiff recalled an instance when a pallet of boxes tipped over and he became so anxious he left work. (AR 604.) On December 1, 2021, Plaintiff continued to report struggling with depressive symptoms and anxiety. (AR 611.)

Although the ALJ cited to treatment notes reflecting normal mood and affect that appear to contradict Plaintiff's testimony, these records are not from psychiatric care providers. On June 22, 2020, Plaintiff's mood and affect were reportedly normal, but the ALJ omitted that Plaintiff sought treatment for reproductive issues and tendonitis in his left elbow. (AR 22, 495 – 497.) On April 27, 2021, Plaintiff had an annual wellness visit. (AR 575, 22.) At this wellness visit, Plaintiff reported that he took the last year off work

for his mental health and was "managing." (AR 575.) He reported tolerating his

medications well. (AR 575.) On July 14, 2021, Plaintiff sought treatment for a skin

lesion. (AR 22, 564.) Mood and affect were reportedly normal. (AR 566.) However,

Plaintiff was not seeking treatment for his psychiatric symptoms at either one of these

two appointments.

### (2)   *Frequency of Treatment*

The ALJ also rejected Plaintiff's testimony in part based upon "large gaps in

treatment," and lack of consistent care since the alleged onset date. (AR 22.) Plaintiff

argues this was error because the gaps in treatment are explained by Plaintiff's lack of

funds and interruption due to the COVID-19 pandemic. Defendant, however, asserts that

these gaps reflected the efficacy of Plaintiff's treatment regimen, as well as Plaintiff's

reported ability to manage his mental impairments without significant intervention. As

for Plaintiff's lack of funds, Defendant asserts that Plaintiff was receiving care from P.A.

Short free of charge, yet never pursued additional care, thus undermining Plaintiff's

testimony about the severity of his symptoms.

Although it may have been reasonable for the ALJ to conclude that the level or

frequency of treatment received by Plaintiff was inconsistent with the level of his

complaints, the ALJ failed to discuss the explanations that Plaintiff provided for his

failure to seek more frequent treatment. SSR 96-7p, 1996 WL 374186 (1996) ("[T]he

adjudicator must not draw any inferences about an individual's symptoms and their

functional effects from a failure to seek or pursue regular medical treatment without first

considering any explanations that the individual may provide," or other explanatory

**MEMORANDUM DECISION AND ORDER  - 14**

information in the record.) Here, the record reflects not only that Plaintiff lacked the financial means to seek treatment, but also that the COVID-19 pandemic "severely impacted provider abilities to maintain regular follow-up schedules" with patients. (AR 604.) Further, P.A. Short charted that Plaintiff was hesitant to make medication changes or try new medications due to past poor experiences and adverse effects when he did so. (AR 606.) In addition, P.A. Short documented that there were no clear indications that medication changes "would be particularly helpful in light of" Plaintiff's concern about such changes. (AR 606 – 607.) Plaintiff also reported that he had seen counselors in the past, but that he did not find them helpful. (AR 600.) Considering this evidence, it is unclear what difference more frequent or consistent visits with P.A. Short would have made, or what benefit consistent counseling would have provided.

### (3)    *Daily Activities*

Finally, the ALJ found Plaintiff's daily activities are inconsistent with Plaintiff's statements about the intensity, persistence, and limiting effects of his psychiatric symptoms. (AR 23.) The ALJ concluded Plaintiff's activities suggest that he was not functionally impaired to the extent alleged. (AR 23.) The ALJ cited Plaintiff's reported ability to handle personal care, mow the lawn, pay bills, read, watch television, care for a dog, visit with family, go on yearly camping trips with his wife, and drive. (AR 23.) The ALJ also noted Plaintiff's ability to return to a part-time job surrounded by 40 employees. (AR 23.) Plaintiff argues the ALJ's reliance on Plaintiff's daily activities was misplaced because the ALJ did not explain how these activities met the threshold for full-time competitive employment. Defendant argues that the ALJ did not need to find that

**MEMORANDUM DECISION AND ORDER  - 15**

Plaintiff's activities were consistent with full-time employment—only that the extent of Plaintiff's activities undermined his allegations of disabling mental impairments. In reply, Plaintiff contends that Defendant failed to explain how Plaintiff's activities contradicted his other statements concerning the impact of his psychological symptoms.

While a claimant need not "vegetate in a dark room" to be eligible for benefits, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987), the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting, *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent they contradict claims of a totally debilitating impairment. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010).

Here, the Court finds the ALJ did not adequately explain why Plaintiff's activities contradicted his testimony. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The activities relied upon by the ALJ are activities that do not require interaction with others, except for family, and may not rise to the level of interaction that one must sustain for full-time employment. The ALJ did not support his conclusion that Plaintiff's solitary activities, such as reading and watching television, undermined Plaintiff's allegations that he was unable to sustain interaction with co-workers or persist at a full-time job without interruption from psychological symptoms.

Nor did the ALJ explain how Plaintiff's ability to work part-time for 16 to 20 hours each week undermined Plaintiff's testimony that "[i]t's all I can do to get through

that." (AR 85.) For instance, Plaintiff testified that he was not able to deal with co-workers and supervisors very well, and that he was fearful he would lose his temper if he confronted them. (AR 88, 91.) Plaintiff reported that he once was laid off from a job because of a confrontation with a co-worker. (AR 342.)  Plaintiff testified that he had disturbing dreams, and that he took naps during the day, which would seemingly interfere with the ability to sustain full-time employment. (AR 92.) Plaintiff explained that his psychological symptoms came about because of his previous high-stress job,[4] and that as a result, any time he had to do something that was difficult, he broke out "in sweats, and I can't do it." (AR 93 – 94.) Contemporaneous reports contained in medical records from January 30, 2020, indicated that Plaintiff had reported losing three jobs in the last twelve months, and that his anxiety was overwhelming. (AR 469, 21.) He reported being terminated from a position at a school lunch warehouse due to inattention related to anxiety and panic, causing an injury to his arm. (AR 469.) The ALJ did not discuss this contrary evidence.

Accordingly, the Court finds the ALJ did not make specific findings justifying his decision to discredit Plaintiff's allegations that he was unable to sustain full-time employment on account of disabling symptoms from his psychological impairments.

---

[4] Plaintiff testified that, as part of the emergency response team at the technology company, he saw employee injuries and explosions, including an instance involving a plane crash on site that "killed the pilot and strew---rained all over the site. And we had a guy get run over by an earthmover, killed him, in his truck…." (AR 94.)

**MEMORANDUM DECISION AND ORDER  - 17**

2.    **Medical Opinions**

Plaintiff alleges the ALJ erred by improperly disregarding the opinions of Dr. Radcliff and P.A. Short, and that the ALJ's conclusion finding the opinions of state agency medical consultants Drs. Stephenson and Greenspan persuasive is unsupported by substantial evidence in the record. Defendant counters that the ALJ reasonably evaluated the medical opinions.

A.    **Standard of Review**

Under the applicable regulations which became effective on March 27, 2017, the Commissioner is instructed not to "defer or give any specific evidentiary weight…to any medical opinion(s)… including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Rather, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources according to the following factors: supportability; consistency; relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examinations); specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors for evaluating persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Therefore, the ALJ must explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The supportability factor looks inward at the medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a

medical source are to support his or her medical opinion(s)…, the more persuasive the medical opinions…will be." 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion(s)…is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)…will be." 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

The ALJ must "articulate…how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). "The 'more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding." *Carmen Claudia S. v. Saul*, 2021 WL 2920614, at *8 (C.D. Cal. July 9, 2021) (quoting *Robert S. v. Saul*, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021)). "In sum, the Commissioner must explain [her] reasoning and specifically address how [she] considered the supportability and consistency of the opinion, and [her] reasoning must be free from legal error and supported by substantial evidence." *Id*. (quoting *Titus L. S. v. Saul*, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021)) (citations omitted).

The ALJ needs to address the remaining factors—treatment relationship, specialization, and any other factors—when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3). The ALJ may address multiple opinions from a single medical source

**MEMORANDUM DECISION AND ORDER  - 19**

in one analysis. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1) (explaining that "voluminous case records" necessitate source-level articulation).

### B.     Analysis

#### (1)    *Drs. Stephenson and Greenspan*

Dr. Stephenson provided his opinion on initial review that, based on Plaintiff's subjective reports and the objective medical evidence, Plaintiff has moderate limitations with regard to concentration, persistence, memory and adaptation and would be limited to simple, repetitive work that did not involve a lot of interaction with others. (AR 108 – 09.) On reconsideration, Dr. Greenspan found Dr. Stephenson's prior opinion persuasive and consistent with the objective evidence and third-party statements. (AR 127.) In turn, the ALJ found these opinions persuasive because they were internally consistent, and well supported by a reasonable explanation and the available evidence, which reflected fairly benign mental status findings when receiving appropriate medication therapy. (AR 24.) Further, the ALJ found the opinions consistent with Plaintiff's activities of daily living, which included caring for a dog, handling personal care and household chores, and working part time. (AR 24.)

Plaintiff points out, however, that the ALJ cited to records from treatment sessions focused on problems unrelated to his mental health, just as the ALJ did when evaluating Plaintiff's subjective symptom testimony, and that other treatment notes relied on by the ALJ corroborated Plaintiff's symptom testimony. Pl.'s Brief at 10 – 11. (Dkt. 10.) A review of the medical records relied upon by the ALJ reveals that, just as above, the records reflecting "benign mental status findings" involved the provision of care other

MEMORANDUM DECISION AND ORDER  - 20

than psychiatric care, such as treatment for reproductive issues, a skin tag, and a wellness

visit. (AR 24, citing Ex. 6F, AR 497; Ex. 8F/5, 14 - 18, AR 566, 575 – 79.) In contrast,

records from Plaintiff's treating mental health provider, P.A. Short, dated January 30,

2020, revealed increasing anxiety, worsening depressive symptoms, the inability to

maintain a job due to interference from psychiatric symptoms, and passive suicidal

ideation. (AR 24, *citing* Ex. 2F/15-18, AR 469 – 72.) Records from January 12, 2021,

through December 1, 2021, reflected minor improvement in psychiatric symptoms,

difficulty in going to work at his part time job, anxiety, and passive suicidal ideation. (AR

24, *citing* Ex. 9F/1-12, 16 – 19, AR 596 – 607, 611 - 614.) While limited, these mental

health treatment records are inconsistent with the ALJ's conclusion that mental status

findings were "fairly benign when receiving appropriate medication therapy."

Accordingly, the Court finds the ALJ's reasons for finding the opinions of Drs.

Stephenson and Greenspan persuasive is not supported by substantial evidence.

### (2)   *Alison Radcliffe, Ph.D.*

Dr. Radcliffe provided a mental status examination report following a consultative

examination on September 18, 2020. (AR 483 – 488.) At the time of the consultative

examination, Plaintiff was not working. Dr. Radcliffe interviewed Plaintiff, and reported

that Plaintiff appeared anxious throughout, although she noted that toward the end of the

interview Plaintiff appeared more comfortable. (AR 486.) Dr. Radcliffe administered

objective tests, including Trails A and B. Based upon her interview, results of objective

testing, and her review of medical records, Dr. Radcliffe concluded Plaintiff "appears to

be in a state of deterioration….His prognosis appears to be poor at this time if no other

**MEMORANDUM DECISION AND ORDER  - 21**

factors are changed." (AR 488.) She assessed functional deficits in several areas,
"including his ability to manage his daily activities, take his medication without
reminders, and…sometimes forget about his hygiene without prompts. He appears to
have limited functional abilities at this time." (AR 488.)

The ALJ found Dr. Radcliff's opinion to be unpersuasive for several reasons: (1) it
was vague and ambiguous and did not provide specific functional limitations; (2) it relied
heavily on the subjective report of symptoms and limitations provided by Plaintiff and his
spouse; (3) it was not supported by the examiner's own findings, which reflected "benign
mental status findings"; (4) it was inconsistent with the "benign mental status findings
reported by treating medical providers when receiving appropriate medication therapy";
and, (5) it was not entirely consistent with Plaintiff's activities of daily living.

The Court finds the ALJ's reasoning regarding Dr. Radcliff's opinion lacks
support from substantial evidence. First, the ALJ discounted Dr. Radcliffe's opinion
because it was vague and unsupported. (AR 24.) An ALJ "need not accept the opinion of
any physician…if that opinion is brief, conclusory, and inadequately supported by
clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ does
not discuss the narrative summary detailing Dr. Radcliffe's clinical interview, review of
records, objective findings concerning Plaintiff's concentration, persistence, and pace,
and her impression and prognosis. The ALJ's conclusory dismissal of Dr. Radcliffe's
opinion is not supported by substantial evidence.

Next, the ALJ concluded Dr. Radcliffe's opinion was unpersuasive because Dr.
Radcliffe relied upon Plaintiff's subjective report of symptoms. If a provider's opinion is

based to a large extent on a claimant's self-reports, and the ALJ finds the claimant's subjective symptom testimony to be inconsistent with other evidence in the record, the ALJ may find that provider's opinion unpersuasive. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). However, Dr. Radcliffe also conducted a clinical interview and a mental status evaluation. "These are objective measures and cannot be discounted as a 'self-report.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Moreover, the field of psychiatry will "always depend in part on the patient's self-report, as well as on the clinician's observations of the patient." *Poulin v. Bowen*, 817 F.2d 865, 873–74 (D.C. Cir. 1987). Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness. *Buck*, 869 F.3d at 1049. Accordingly, the Court finds Dr. Radcliffe's partial reliance on Plaintiff's self-reported symptoms is not a reason to find Dr. Radcliffe's opinion unpersuasive.

Third, the ALJ determined that Dr. Radcliffe's opinion was inconsistent with both her own and other providers' assessments of "benign mental status findings." The more "relevant the…supporting explanations presented by a medical source are to support his or her medical opinion(s)…, the more persuasive the medical opinions…will be." 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). And, the more consistent an opinion is with the evidence from other sources, the more persuasive the opinion. 20 C.F.R. § 416.920c(c)(2). As discussed above, the ALJ relied upon records from appointments focused on physical problems, not Plaintiff's mental health. In contrast, mental health treatment records consistently documented worsening psychiatric symptoms and anxiety.

**MEMORANDUM DECISION AND ORDER - 23**

Further, Dr. Radcliffe's mental status evaluation did not reflect "benign" findings. (AR 486 – 487.) She observed that Plaintiff exhibited an anxious mood and affect; struggled with details related to personal information; appeared able to concentrate once given a task or question and shown what to do, but that he struggled with abstract tasks and questions; and that he struggled with concentration, persistence, and pace. (AR 486 – 87.) Her prognosis was that Plaintiff appeared to be in a state of deterioration. (AR 488.) Accordingly, the ALJ's conclusion that Dr. Radcliffe's opinion was inconsistent with her own and others' mental status examinations is not supported by substantial evidence.

Last, the ALJ found Dr. Radcliffe's opinion was inconsistent with Plaintiff's daily activities. Such an inconsistency may justify finding a medical opinion unpersuasive. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600–02 (9th Cir. 1999). Here, however, and as discussed above, a review of the record as a whole does not reveal an inconsistency between Dr. Radcliffe's opinion and Plaintiff's daily activities. Plaintiff performed basic chores and limited his social interaction to family members. He testified that it was "all he could do" to complete 3-to-4-hour shifts at a part time job. This is consistent with Dr. Radcliffe's report, where Plaintiff reported he did not leave the house unless necessary, and that he had limited social contact. (AR 487.) The Court does not find Plaintiff's limited daily activities in conflict with the opinion of Dr. Radcliffe.

**(3)    *P.A. Short***

Plaintiff's treating mental health provider, William Short, PA-C, completed a medical source statement of Plaintiff's ability to do work related activities on January 30, 2021. (AR 608 – 610.) P.A. Short opined Plaintiff had "marked" impairments in the areas

of understanding, remembering, and carrying out complex instructions and the ability to

make judgments on complex work-related decisions; and a marked impairment in his

ability to interact appropriately with the public, supervisors, co-workers, and to respond

appropriately to work-related situations. The ALJ found P.A. Short's opinion

unpersuasive for the same five reasons as he did Dr. Radcliffe's opinion. (AR 25.) In line

with the discussion, above, the Court does not find the ALJ's reasons are supported by

substantial evidence based on the record as a whole.

Upon remand, the ALJ must re-consider the persuasiveness of the medical

opinions and give reasons supported by substantial evidence if he intends to reject them.

## 3.    Development of the Record

Plaintiff argues the ALJ failed to fully develop the record pertaining to his

physical complaints related to a history of low back surgery (discectomy), right shoulder

surgery, and left ulnar tendonitis. Pl. Brief at 16. (Dkt. 10). Plaintiff testified about his

pain in his left shoulder and "tennis elbow." The ALJ found the record demonstrated very

little treatment for any alleged physical impairments and did not support the need for a

consultative examination. (AR 13.) In support of this conclusion, the ALJ relied upon the

following evidence. First, the ALJ acknowledged Plaintiff's counsel requested a

consultative examination, but that she did not renew her request for such an examination

at the hearing. Second, after having had an opportunity to supplement the record

following the hearing, Plaintiff's counsel affirmed that all records had been provided and

the "record can be closed." (AR 13, 417.) Third, the ALJ noted the record reflected

Plaintiff received conservative treatment for his left elbow pain, with no follow up

**MEMORANDUM DECISION AND ORDER - 25**

treatment after January of 2020. (AR 16.) Further, the ALJ found that there was no objective evidence or diagnosis of a shoulder impairment. (AR 13, 17.) Last, the ALJ noted that Plaintiff was currently working at a job requiring him to handle packages of up to 40 pounds, and he had not requested any physical restrictions or accommodations associated with this job. (AR 13, 17.) Pointing to the ALJ's analysis, Defendant asserts that the record was not ambiguous and the ALJ therefore had no duty to develop it further. Def.'s Brief at 14 – 15. (Dkt. 12.)

Although the burden of demonstrating disability lies with the claimant, the ALJ has an independent duty to assist in developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001). One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination. *Id*. (citing 20 C.F.R. §§ 404.1519, 416.919). However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).

Here, Plaintiff was represented by legal counsel, so there was no heightened duty on the ALJ to develop the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts."). The Court finds the evidence concerning Plaintiff's physical impairments was not ambiguous or inadequate. The state agency medical consultants found no medically determinable severe physical impairments, and the ALJ's finding that these agency opinions were persuasive was not challenged on

appeal. (AR 23.) At the hearing, the ALJ confirmed Plaintiff did not allege any orthopedic impairments on his initial disability report and that the primary conditions keeping him from working were his mental impairments. (AR 86.) Further, the ALJ noted the record reflected little treatment for any alleged physical impairments, and Plaintiff had the ability to work part time lifting packages up to 40 pounds with no physical accommodation. (AR 13.)

Because the evidence was not ambiguous, it was Plaintiff's duty to provide evidence of a severe impairment. *See Mayes*, 276 F.3d at 459 ("It was [claimant's] duty to prove that she was disabled."); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."). Plaintiff presented no evidence that his physical impairments were severe beyond his testimony at the hearing and his subjective comments. However, that testimony was not sufficiently supported by any physician or treatment records. (AR 13, 16 – 17.) Moreover, when provided an opportunity to submit additional records following the hearing, Plaintiff's counsel indicated all additional records had been provided and the record could be closed. (AR 13, 417.)[5]

---

[5] Moreover, it is not clear that the issue is ripe for appellate review considering Plaintiff's counsel represented on December 1, 2021, that the record was complete and a decision could be issued, despite her prior request for a consultative examination. *Evan T. W. v. Kijakazi*, No. 1:22-CV-00306-REP, 2023 WL 3604477, at *4 (D. Idaho May 23, 2023)

Accordingly, the Court finds that the ALJ was not required to further develop the record and will not reverse or remand the ALJ's decision for declining Plaintiff's request for a consultative physical examination.

**4.   Third Party Statements**

Plaintiff contends the ALJ failed to provide germane reasons for disregarding the five statements provided by family and friends, which corroborated Plaintiff's subjective symptom testimony.

### A.   *Legal Standard*

20 C.F.R. § 404.1520c governs how an ALJ must evaluate evidence from medical sources, which includes a clarification on how an ALJ evaluates nonmedical lay testimony. *See* 20 C.F.R. § 404.1520c(d). Under the plain language of the regulations, the ALJ must consider lay witness statements: "In evaluating the intensity and persistence" of symptoms, the ALJ "consider[s] all of the available evidence," including that from "medical sources and nonmedical sources about how [a claimant's] symptoms affect [him]." 20 C.F.R. §§ 404.1529(c)(1); 416.929(c)(1); *see also* SSR 16-3p (requiring ALJs to consider other evidence such as other non-medical sources to evaluate symptoms). However, 20 C.F.R. §§ 404.1520c(d); 416.920c(d), specifies that the ALJ is not required to articulate how he or she considered evidence from nonmedical sources "using the requirements in subparagraphs (a) – (c)," applicable to evaluations of medical opinions.

Rather, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he [or she] must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). *See also Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) ("Lay

testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so," quoting *Lewis*, 236 F.3d at 511)).

B.    *Analysis*

Plaintiff submitted a third-party function report completed by his mother, and third-party statements from Plaintiff's brother-in-law, sister-in-law, wife, friend, and daughter. (AR 25.) The ALJ stated that he reviewed these statements along with all other evidence before reaching the conclusions set forth in the written decision, but he gave no reasons to discount the testimony. (AR 25.)

Defendant asserts that, under the 2017 regulations, the ALJ need not provide reasons to discredit or reject statements, and in the alternative that any error is harmless. The Court rejects Defendant's first contention. The language of 20 C.F.R. § 404.1520c(d) and 20 C.F.R. § 416.920c(d) provides that the agency need not use the criteria outlined for evaluation of medical sources when evaluating nonmedical sources, not that the agency need not articulate its reasoning at all when evaluating nonmedical sources. Thus, the 2017 regulations do not displace existing caselaw in this area. *Nicole N.-M. v. Comm'r, Soc. Sec. Admin.*, 649 F. Supp. 3d 1025, 1040 (D. Or. 2022).

Defendant alternatively argues the error by the ALJ was harmless. A failure to address lay testimony may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Johnson v. Kijakazi*, No. 21-35755, 2022 WL 3998572, at *2 (9th Cir. Sept. 1, 2022) (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). The Court finds Defendant's position fails. A

review of the multiple statements in the record reveals significant support for Plaintiff's testimony concerning the extent of his psychological limitations. Plaintiff's family and friends describe social isolation, anxiety, trouble maintaining employment, and lack of motivation when he once had a strong work ethic. (AR 409, 411, 413 – 416.) As discussed above, the ALJ's reasons for finding Plaintiff's subjective symptom testimony inconsistent with the record were not supported by substantial evidence. The ALJ therefore did not provide a well-supported reason for disregarding the lay witness statements, and the ALJ's error was not harmless.

## CONCLUSION

For the reasons stated, the ALJ's decision will be reversed and remanded. In this case, the record does not conclusively show that Plaintiff is disabled, and therefore this matter warrants further proceedings. The basis for reversal is the failure of the ALJ to properly evaluate Plaintiff's symptom testimony, the medical opinions, and lay witness statements. The appropriate remedy, therefore, is remand for further proceedings.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED that:**

1)      The decision of the Commissioner of Social Security is **REVERSED**.

2)      This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3)      This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

Dated: **January 23, 2024**

Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER  - 31**